UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

AMBER LYNNE FLETCHER,)
)
        Plaintiff,)  Case No. 1:11-cv-1100
)
v.)  Honorable Robert J. Jonker
)
COMMISSIONER OF)
SOCIAL SECURITY,)
)  **REPORT AND RECOMMENDATION**
        Defendant.)
)

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On July 17, 2008, plaintiff filed her applications for benefits alleging a July 7, 2006 onset of disability.[1] (A.R. 278-90). Plaintiff's disability insured status expired on June 30, 2009. Thus, it was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled on or before June 30, 2009. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claims for DIB and SSI benefits were denied on initial review. On October 27, 2010, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 40-108). On April 14, 2011, the ALJ issued a decision finding that

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, August 2008 is plaintiff's earliest possible entitlement to SSI benefits.

plaintiff was not disabled. (A.R. 24-35). On November 30, 2011, the Appeals Council denied review (A.R. 1-4, 7-10), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. She asks the court to overturn the Commissioner's decision based on the following arguments:

1. There was not "substantial evidence of the whole record to deny disability benefits[;]"

2. The ALJ's factual finding regarding plaintiff's residual functional capacity (RFC) is not supported by substantial evidence;

3. "The ALJ's [r]easons for rejecting the opinion of Dr. Tatyana Sigel, M.D. and Nurse Practitioner Michalowski, the only treating doctor [sic], [are] not supported by substantial evidence."

(Statement of Errors, Plf. Brief at iii, docket # 15). I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the

evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from July 7, 2006, through June 30, 2009, but not thereafter. (A.R. 26). Plaintiff had

not engaged in substantial gainful activity on or after July 7, 2006. (A.R. 26). Plaintiff had the following severe impairments: "degenerative disc disease, fibromyalgia, synovitis of hands, obesity, depression, history of substance abuse, post-traumatic stress disorder, bipolar disorder and anxiety disorder." (A.R. 26). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 26-28). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can only frequently finger and handle objects; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and never reach overhead or climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to vibration. She has the mental residual functional capacity to understand, remember, and carry out unskilled, simple, repetitive, routine 1-2 step tasks with a stable routine and average productivity. She is limited to minimal, brief and superficial contact with supervisors and coworkers on an intermittent basis and no public contact.

(A.R. 28). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> The claimant testified at the hearing that she wakes up crying and cries all day. She stated that she suffers from depression. She is paralyzed with fear and self-loathing and she does not want people to see her. She stated that she had friends when she was working, but the last time a friend came over was about 5 years ago. She stated that the thought of getting out of the house made her vomit and shake. She feels like everyone is looking at her and judging her. She testified that her significant other comes by to check on her and to make [sure] her kids are cared for and that she has not killed herself.
>
> She further testified that she has cramps in her hips and back. She stated that the pain in her hips is 8.5/10 and that she cries all day from the pain. The claimant further testified that her hands swell and as a result she cannot write well.
>
> She stated that her boyfriend does all the shopping as she is inappropriate to strangers. She stated that she can stand 5-10 minutes, she can walk to [the] mailbox and back and that she must sit on one buttock. She stated that she lies down most of the time and cannot lie on her side or her back, she must lie on her stomach.

She stated that she obtained her degree in medical billing, but she almost got kicked out. She stated that although she was in an externship for 5 weeks, the office had a couch and there was nothing to do so she slept all the time. She stated that the phone rang 1-2 times a day. She had trouble driving to her classes. She stated that she becomes nervous and shakes. She stated that the program babied her and got her through the class. She stated that she has tried to get a job but no one wants to hire her.

\* \* \*

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

\* \* \*

Overall, the claimant's depression increased when she is having psychosocial stressors, and her mood improves with medication. I have accommodated her mental impairments by limiting the claimant to unskilled, simple, repetitive, routine 1-2 step tasks with a stable routine and average productivity. She is limited to minimal, brief and superficial contact with supervisors and no public contact. The record does not support greater limitation.

\* \* \*

Overall, I have accommodated the claimant's physical impairments by limiting her to less than light work. The claimant received conservative treatment and had normal physical examinations. She had no significant stenosis, the EMG was negative, and she was able to heel and toe walk without assistance. I accommodated her hand impairments by limiting her to frequent fingering and handling objects.

\* \* \*

In addition to the objective evidence, I have considered the factors enumerated in SSR 96-7p in evaluating the intensity, persistence and limiting effects of the claimant's symptoms. Numerous factors militate against a finding of a greater restriction than that delineated in my residual functional capacity finding. For example, although the claimant testified that during her externship no one oversaw her and she slept all day, the record shows that she completed the externship and the courses for medical billing. The progress notes from her mental health treatment consistently show that the claimant has good judgment, intact memory, attention and concentration, no perceptual disturbances and that her speech was clear. The claimant's mental impairments improved with medication and were largely affected by psychosocial stressors. These factors combine to diminish the claimant's credibility.

> I am sympathetic to the claimant's condition but ultimately cannot find her limitations to be such as to preclude her from performing work activities within the residual functional capacity assessment shown. She has severe impairments which do limit her functionality but her conservative treatment and the evidence that her mental impairments are situational and improve with medication reveal that the claimant would not be precluded from performing within the above residual functional capacity assessment.

(A.R. 29-33). Plaintiff was unable to perform any past relevant work. (A.R. 33). Plaintiff was 34-years-old as of her alleged onset of disability, 36-years-old as of the date her disability insured status expired, and 38-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 34). Plaintiff has a high school education and is able to communicate in English. (A.R. 34). The transferability of work skills was not material to a disability determination. (A.R. 34). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with her RFC, education, and work experience, the VE testified that there were more than 13,600 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 103-05). The ALJ held that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.[2] (A.R. 34-35).

---

[2]Plaintiff has a history of alcohol and drug abuse. (A.R. 395, 399, 415-16, 423, 471, 523, 526, 579). Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to her disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability.

**1.**

Plaintiff argues that the ALJ's finding that she was not disabled is not supported by substantial evidence. (Plf. Brief at 19). Specifically, she argues that the ALJ failed to provide an adequate explanation for her factual finding that plaintiff's testimony was not fully credible. (Plf. Brief at 19-21, 29-32; Reply Brief at 1-3). This case turns on the ALJ's credibility determination regarding plaintiff's subjective complaints. Credibility determinations are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ found that plaintiff's testimony regarding her functional limitations was not fully credible. (A.R. 29-33). The ALJ determined that plaintiff overstated her mental and physical limitations and punctuated those findings with extensive discussion of the medical and other evidence supporting her findings. For example, the ALJ found that plaintiff's successful completion of a medical records course was inconsistent with the level of functional restriction plaintiff claimed. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's credibility finding is supported by more than substantial evidence and the ALJ gave a more than adequate explanation why she found that plaintiff's testimony was not fully credible. *See Rogers v. Commissioner*, 486 F.3d 234, 247-49 (6th Cir. 2007).

**2.**

Plaintiff argues that the ALJ's factual finding regarding her RFC is not supported by substantial evidence because the ALJ "ignored all the testimony by the claimant, her witnesses, the VE, and treating doctors that suggest due to pain and depression, the claimant would be incapable of performing a job 8 hours a day, 5 days a week." (Plf. Brief at 21). The ALJ did not "ignore" any of this evidence. She found that plaintiff's testimony was not credible and that the more restrictive opinions emphasized by plaintiff were not persuasive. RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). The ALJ found that

plaintiff retained the RFC for a limited range of light work. (A.R. 28). I find that the ALJ's factual finding regarding plaintiff's RFC is supported by more than substantial evidence.

Plaintiff accuses the ALJ of "cherry picking" the record. (Plf. Brief at 22). This argument is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence. *See Ulman v. Commissioner*, 693 F.3d at 713; *Bass v. Mahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Plaintiff argues that the ALJ's finding that Psychologist J. Keith Ostien's opinions were entitled to little weight is evidence of cherry picking. (Plf. Brief at 22). The only time Psychologist Ostien saw plaintiff was a consultative mental status exam on August 21, 2008. (A.R. 578-81). Plaintiff reported that she attended regular classes in school, graduated from high school, and took a few college classes. (A.R. 579). Plaintiff stated that she had an extensive history of drug and alcohol abuse, but asserted that substance abuse was no longer a problem:

> Amber indicated that she began using alcohol at age 14, marijuana at 15, and cocaine at 21. When she was 26, she began abusing crack, and heavily abused this for a short period of time. Amber stated that she was in two inpatient substance abuse treatment programs and several outpatient treatment programs. She claimed that she has been completely cocaine free for nine years. She stated that she smokes marijuana about two times a year and has one drink a year. She stated that she no longer has any problem with drugs or alcohol.

(A.R. 579). Plaintiff had never been hospitalized for mental health problems. (A.R. 579). She was oriented to time, place and person. She completed serial sevens "quickly and with no mistakes." (A.R. 580). She exhibited average capabilities in her general fund of knowledge. She had average capabilities in abstract reasoning. (A.R. 581).

The negative aspects of Ostien's evaluation arose from plaintiff's self-rating (existential anxiety scale and social avoidance and distress scale), her statements about suicidal thoughts and not providing care for her children, and the attitude and behavior she displayed during the hour she spent at Ostien's office. (A.R. 69). She stated that she experienced suicidal thoughts on a daily basis. She expressed a great deal of frustration, irritation, and impatience with her children, ages 5 and 8. (A.R. 579). Plaintiff stated that she did not feed the children unless they asked to be fed and she indicated that she left them unsupervised "for long stretches at a time." (A.R. 579-80). Psychologist Ostien made the following observations regarding plaintiff's attitude and behavior:

> Throughout this evaluation Amber repeatedly discussed how horrible her life situation is, how overwhelmed she is by everything in her life, her frustration and anger with her children, and her severe distrust of other people. Throughout this evaluation Amber seemed overwhelmed by her life circumstances and seemed to have very ineffective internal psychological coping mechanisms. She was agitated, angry, bitter, and self-absorbed. Throughout much of the evaluation she spoke in rather confused and disorganized ways and sought to portray herself as extremely disabled and unhappy. Amber projected responsibility for her problems in her life onto other individuals and situations, made repeated statements reflecting a sense of being a victim within the world, and described a history of problematic relationships and marginal functioning in almost all aspects of her life.

(A.R. 580). Psychologist Ostien offered a diagnosis of a major depressive disorder, recurrent, severe, without psychotic features, paranoid personality disorder, various physical problems reported by plaintiff, and "moderately severe psychosocial stressors." He gave plaintiff a GAF score of 52. He stated that plaintiff could not manage her own funds because her judgment appeared too impaired. He characterized plaintiff's prognosis as poor. He stated that plaintiff was in need of "intensive ongoing outpatient psychological treatment." (A.R. 581).

Psychologist Kathleen O'Brien testified at plaintiff's hearing as a medical expert.[3] (A.R. 93). O'Brien had the opportunity to review plaintiff's medical file and hear her testimony. (A.R. 93). She offered her opinion that plaintiff's mental impairments would limit her "to simple, unskilled tasks" and only occasional contact with peers and supervisors, no contact with the general public, and would require a stable routine with only average productivity. (A.R. 94). Psychologist O'Brien noted that since 2004, plaintiff's only mental health care treatment had been provided by a nurse practitioner, "with no evidence that a physician or psychologist ha[d] ever – ha[d] ever had any part in her treatment. (A.R. 94). She noted that there was a significant gap in the treatment provided by the nurse practitioner "from July of '08 to February of '09 when it does not appear that she was seeing anyone for treatment at that point." (A.R. 94). She also found it notable that the nurse practitioner's mental status evaluations generally placed plaintiff within normal limits:

> [M]ost notable is that the mental status evaluations the nurse practitioner does at each visit have always been within normal limits, looking specifically at 9F and then again 16F. There's also two – they're also basing the situational component to the onus in that she appears to be most tearful and most upset when she's having a problem in the major relationship in her life. At other times, its reported that she's starting to feel better and she's doing better on medication, but each time the mental status is within normal limits.

(A.R. 95). O' Brien made the following observations regarding Ostien's report:

> Dr. Ostien's report says that the claimant has a need for more intensive treatment and if h[is] subreport is accurate, she probably should be doing more than seeing a nurse practitioner at least once every three months, but it's notable in Dr. Ostien's reports that []he administers two tests, the existential anxiety scale and social avoidance and distress scale, which are entirely read as the results as self-report, so the scoring results [INAUDIBLE] dependent on what the claimant says and how the claimant expresses how she's feeling at any given time. When he does his own formal mental status, it's within normal limits. I think he's reacting to her perceptions that she's getting very distressed and if that's in fact the case then she

---

[3]The medical expert's name appears as "Kathleen M. O'Brien, Ph.D." in her statement of qualifications. (A.R. 262). I have disregarded the alternative appellation appearing in the hearing transcript: "Stephanie O'Brian." (A.R. 93).

should be referred for some counseling, she should be seeing a doctor more often than once every three months. As to his opinion that she would have judgment that would be too impaired to manage her own funds, he is probably also taking into account the fact that she has substance abuse history and that would be indicated -- that would present some judgment.

(A.R. 96).

The ALJ found that Psychologist Ostien's opinion was entitled to little weight because it was internally inconsistent, and that the medical expert testimony of Psychologist O' Brien was more persuasive:

> I afford the opinion of Dr. Ostien in 9F little weight, as this physician noted that the claimant could not manage fund and needed extensive therapy. However, his exam findings show the claimant was oriented to time place and person; had average reasoning; moderately severe psychosocial stressors; no psychological hospitalizations and recommended only outpatient therapy. Thus his opinion conflicts with his own findings as well as the medical record. The medical expert who testified at the hearing also noted that this was the only visit with Dr. Ostien, her depression improves when she takes her medication and when her psychosocial stressors improve, and there was a gap in the treatment records from July 2008 through February 2009. Dr. O'Brien also stated that it is notable that Dr. Ostien administered two tests, but the tests were subjective and he was reacting to her perceptions. His objective tests showed normal results. Dr. O'Brien also noted that Dr. Ostien likely relied on the claimant's history of substance abuse when he opined that she could not manage her own funds. As such, I afford this opinion little weight.

(A.R. 33). The ALJ did not "cherry pick" this administrative record. She performed her job. She weighed all the evidence and made a factual finding regarding plaintiff's RFC that is supported by more than substantial evidence.

**3.**

Plaintiff argues that the ALJ violated the treating physician rule in the weight she gave to the opinions of and Nurse Practitioner Susan Michalowski and Dr. Tatyana Sigel, M.D. (Plf. Brief at 24-29).

A.  Nurse Practitioner Michalowski

Nurse Practitioner Michalowski provided treatment at times during the period at issue: July 7, 2006, through April 14, 2011. (A.R. 316-17, 571-75, 625-31, 634-35). On an unspecified date, Ms. Michalowski wrote a note to plaintiff's attorney stating that plaintiff's emotional and physical impairments presented her from maintaining employment on a full-time basis. (A.R. 636). On October 25, 2010, two days before plaintiff's hearing, Nurse Michalowski completed a psychiatric review technique form (A.R. 640-53) and a "Medical Source Statement of Ability to Do Work Related Activities (Mental)" (A.R. 654-56).

A nurse practitioner is not an "acceptable medical source." See 20 C.F.R. §§ 404.1513(a), (d), 416.913(a); *see also Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06–3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)). The opinions of a nurse practitioner fall within the category of information provided by "other sources." *Id.* at * 2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1512, .1527, 416.912, .927). This is not a demanding standard, and it was easily met here. The ALJ considered Nurse Practitioner Michalowski's opinions and found that they were entitled to little weight:

> Dr. Michalowski opined in an undated letter that the claimant is unable to sustain employment on a full time basis due to her emotional and physical impairments (Ex. 15F/3). Dr. Michalowski completed a psychiatric review technique in October 2010. (Ex. 17F, 18F). She opined that the claimant had mild restriction in daily living, marked difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and 4 or more episodes of decompensation. (Ex. 17F/14). I afford these opinions little weight, as the nurse practitioner's notes in 15F and 17F do not support this assessment, as the notes state that the claimant has good judgment, intact memory, attention and concentration, no perceptual disturbances, and that her speech was clear.

(A.R. 32). The ALJ was not required to give any particular weight to Nurse Michalowski's opinions. The lack of objective evidence supporting her opinions and her inconsistent treatment notes were appropriate grounds for discounting Ms. Michalowski's opinions. *See Buxton*, 246 F.3d at 773; *see also Payne v. Commissioner*, 402 F. App'x 109, 115 (6th Cir. 2010).

B.  Dr. Sigel

Plaintiff argues that the ALJ should have given greater weight to the opinions of Dr. Sigel. Two days after the hearing,[4] plaintiff's attorney sent a letter to the ALJ which stated as follows:

> Enclosed are the counter-signed pages of the Psychiatric Review Technique Form and Medical Source Statement of Ability To Do Work Related Activities (Mental) regarding the above-referenced claimant.
>
> These forms have been signed by the treating therapist as well as the supervising/treating Psychiatrist.

(A.R. 658). The undated signature of Dr. Sigel appears on the last page of the above-referenced forms. (A.R. 659-60). The record lacks any evidence that Dr. Sigel was, in fact, a treating physician.

---

[4]The notice of hearing is dated September 13, 2010. (A.R. 152, 159, 206, 207, 234). Plaintiff had more than a month's advance notice of her hearing date. She was repeatedly advised of the importance of submitting the evidence in support of her claims before her hearing date. (A.R. 142, 144, 154, 161).

-14-

There are no treatment records from Dr. Sigel. Plaintiff's attorney's single question to his client -- lumping Michalowski and Sigel together -- was not enough to establish a treating physician relationship with Sigel. (A.R. 77). In the absence of treatment records, it was plaintiff's attorney's job to elicit testimony from his client establishing a treating physician relationship by having her provide the details of how often, if ever, she met with Dr. Sigel, the duration of such meetings, and the specific nature of any treatment provided by Dr. Sigel. Adding Sigel's signature on Nurse Michalowski's statements did not transform those opinions into the opinions of a treating physician. The attorney's transmittal letter obviously did not accomplish the transformation. Plaintiff did not present evidence establishing a treating physician relationship with Dr. Sigel. *See Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006). Because Dr. Sigel was not a treating physician, the ALJ was "not under any special obligation to defer to her opinion[s] or to explain why he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011).

**4.**

Plaintiff argues that the ALJ's finding that she did not satisfy the requirements of listing 12.04 is not supported by substantial evidence. She specifically disagrees with the ALJ's factual finding that she did not meet the "paragraph B" requirements of the listing and asserts that the ALJ should have given more weight to the opinions expressed by Nurse Practitioner Michalowski and Dr. Sigel. (Plf. Brief at 26-27). Plaintiff's argument consists of a statement that Sigel and Michalowski opined that plaintiff had "marked" difficulties in maintaining social functioning and "four or more" episodes of decompensation. (Plf. Brief at 27)(citing A.R. 650).

The opinions of Nurse Michalowski and Dr. Sigel that plaintiff met the requirements of a listed impairment were entitled to no weight, because it is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). Further, plaintiff's burden on appeal is much higher than identifying evidence on which the ALJ could have based a finding in her favor. "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d at 477.

"At step three [of the sequential analysis], an ALJ must determine whether the claimant's impairment meets or is equivalent in severity to a listed mental disorder. The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations and citations omitted). It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Malone v. Commissioner*, No. 12-3028, 2012 WL 5974463, at * 1 (6th Cir. Nov. 29, 2012). It

is insufficient that a claimant comes close to satisfying the requirements of a listed impairment. *Elam*, 348 F.3d at 125.

Listings for mental impairments generally begin with paragraph A criteria -- a statement describing the disorder addressed by the listing (a set of medical findings) -- followed by the paragraph B criteria -- a set of impairment-related functional limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Listing 12.04 is one of the four mental impairment listings containing paragraph C criteria (a second set of impairment-related functional limitations). *Id.* "The requirements in paragraphs B and C describe impairment related functional limitations that are incompatible with the ability to do any gainful activity." *Id.* These listings are met "when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. Plaintiff has not contested the ALJ's finding that she did not satisfy the paragraph C requirements. (A.R. 28). The paragraph B severity requirements of listing 12.04 require at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. A "marked" limitation is a degree of limitation that is more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *see Sullenger v. Commissioner*, 255 F. App'x 988, 993 (6th Cir. 2007). Repeated episodes of decompensation, each of extended duration, is defined as three episodes within one year, or an average of one episode every four months, each episode lasting for at least two weeks. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4); *see Rohwer v. Commissioner*, No. C11-4110, 2013 WL 124425, at * 11 n.6 (N.D. Iowa Jan. 9, 2013); *Monroe v. Astrue*, No. 09-cv-3338, 2011 WL 98972, at * 8 (C.D. Ill. Jan. 12, 2011).

The ALJ found that plaintiff did not meet the paragraph B requirements of listing 12.04:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office and your ability to perform these activities independently, appropriately, and effectively, and in a sustainable manner. In activities of daily living, the claimant has mild restriction. The claimant reported to the consultative examiner that she engaged in housekeeping, shopping, driving a car, banking, laundry, paying bills, cooking simple meals, childcare and exercise. (Ex. 5F/3). However, she later testified that she is unable to perform any of those activities anymore. Dr. Domino and Dr. O'Brien both opined that the claimant has mild restriction in this area (Ex. 11F/11). I concur, as the evidence shows that the claimant attended classes for medical billing and completed an externship.
>
> The next functional area is social functioning. Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. In social functioning, the claimant has moderate difficulties. The claimant reported to the consultative examiner that she has friends and gets along with them and her neighbors (Ex. 5F/3). Dr. Domino and Dr. O'Brien both opined that the claimant has a moderate restriction in this area. (Ex. 11F/11). The claimant later testified that she had no friends, and her significant other testified that she acts inappropriately in public. However, since the claimant completed classes in medical billing, I find a moderate restriction in this area.
>
> The third functional area is concentration, persistence or pace. Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. With regard to concentration, persistence or pace, the claimant has moderate difficulties. Dr. Domino and Dr. O'Brien both opined that the claimant has moderate restriction in this area.

(Ex. 11F/11). The claimant experiences pain and depression which may interfere with her concentration, persistence or pace. But I do not find marked restriction, as during testing, the claimant's concentration was consistently normal.

The fourth functional area is episodes of decompensation. Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. There is no evidence in the record of such an episode.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

(A.R. 27-28). It would be an extraordinarily rare case where a claimant for DIB and SSI benefits had mental impairments of listing-level severity and no record of psychiatric hospitalization. The ALJ's factual findings regarding the paragraph B criterial are supported by more than substantial evidence.

## **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  March 15, 2013         /s/  Joseph G. Scoville
                               United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).